**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Marcus Brown, M38743, | |
| *Petitioner*, | |
| | No. 22 CV 2126 |
| v. | |
| | Judge Lindsay C. Jenkins |
| Anthony Wills, Warden, | |
| *Respondent*. | |

**ORDER**

*Pro se* Petitioner Marcus Brown ("Brown") brings this habeas corpus petition under 28 U.S.C. § 2254 challenging his convictions in the Lake County Circuit Court of Illinois for murder and aggravated battery with a firearm. Respondent Anthony Wills, the Warden of the Menard Correctional Center ("Respondent"), has filed a motion to dismiss the petition for failure to exhaust available state court remedies. [Dkt. 12.] For the reasons set forth below, the Court denies the motion to dismiss without prejudice and appoints counsel to represent Brown in connection with the next phase of this proceeding.

*Discussion*

In 2013, Brown was convicted of shooting Remorrian Gordan and Shabrina Gully. *Illinois v. Brown*, 2-13-794, 2015 WL 2376315, at *1 (Ill. App. Ct. May 18, 2015). The evidence at trial showed that on October 26, 2004, Gordan and Gully were together in a vehicle in North Chicago, Illinois. *Id*. Gordan attempted to run over Brown with the car and threatened to kill him if he saw him again. *Id*. Brown obtained a gun, and he and Gordan had a second confrontation. *Id*. Gordan got out of the car and reached toward his waistband. *Id*. Brown responded by shooting Gordan. *Id*. Brown also saw someone moving in the car out of the corner of his eye. *Id*. He shot towards the car striking Gully in the face. *Id*. Gordan died at the scene, and Gully later died from her injuries in July 2009. *Id*.

Brown's convictions and sentence were affirmed by the Illinois Appellate Court on direct appeal, *id*. at *4, and the Supreme Court of Illinois denied his petition for leave to appeal. *Illinois v. Brown*, No. 119558, 39 N.E.3d 1005 (Ill. Sept. 30, 2015). Brown filed a postconviction petition in state court in May 2016, which remains pending. [Dkt. 7, at 5 (Case No. 04CF03987).] In 2022, Brown filed this habeas petition raising thirteen claims for relief. [Dkt. 4.] His petition also says that his state postconviction case has been "stagnate" for several years and that "nothing has been done." [*Id*. at 12.]

Respondent moves to dismiss the petition as unexhausted in light of Brown's pending postconviction proceedings. In response, Brown maintains that he is excused from the exhaustion requirement because of inordinate delay in the state court proceedings. As a general principle, a prisoner must exhaust his claims through the state courts. 28 U.S.C. 2254(b)(1)(A). However, the state proceedings maybe deemed ineffective to protect the prisoner's rights resulting in excusing the prisoner from completing the exhaustion

requirement when there is inordinate delay. 28 U.S.C. 2254(b)(1)(B)(i); *Evans v. Wills*, 66 F.4th 681, 687 (7th Cir. 2023).

Brown is correct that his petition has been pending in the state trial court without adjudication for over seven years. Proceedings lasting significantly less time have qualified for inordinate delay findings. *Evans*, 66 F.4th at 685 (citing *Lowe v. Duckworth*, 663 F.2d 42, 43 (7th Cir. 1981) (three and half year delay); *Dozie v. Cady*, 430 F.2d 637, 638 (7th Cir. 1970) (per curiam) (seventeen month delay)). The question for this Court concerns who is responsible for the delay. There is no constitutional right to effective assistance of counsel in a postconviction proceeding, and the Seventh Circuit has previously instructed that delays caused by a prisoner's postconviction attorney are attributable to the prisoner, thus defeating an inordinate delay argument. *Lane v. Richards*, 957 F.2d 363, 365 (7th Cir. 1992).

The Seventh Circuit decision in *Evans* cautioned that determining whether inordinate delay exists is not a "mechanical accounting exercise" that can be accomplished simply by "tallying delays." 66 F.4th at 686. Instead, a multi-year delay should sound "alarm bells" with the state to move a case forward; the state cannot simply "'point its finger'" at the prisoner while "'disclaiming its own responsibility for this procedural fault.'" *Id.* at 687 (quoting *Carter v. Buesgen*, 10 F.4th 715, 723 (7th Cir. 2021)). When facing inordinate delay allegations in the case of a multi-year delay, a district court should "roll[] up its sleeves with the particulars of the factual record." *Id.* at 686.

In its motion to dismiss for failure to exhaust, Respondent argues that the seven-year delay is not attributable to the state because "Petitioner blames his counsel for delaying the case by not yet amending his postconviction petition," and because "this is not a case where [the] postconviction petition is lying dormant with no action of any kind." [Dkt. 12 at 7.] In response, Brown admits that his state court appointed attorney, Keith Grant, has agreed to many of the continuances. [Dkt. 22, pg. 2.] But his response also argues that some of the delay is not his fault. [*Id.*]

First, the Court does not agree with Respondent's characterization of the progress of postconviction case. The Court has reviewed the Lake County Circuit Court online docket as well as a printout of the docket activity that Respondent attached to its filing. [Dkt. 12-2.] The docket reflects that the case has been continued multiple times between 2016 and September 18, 2023, with only a few substantive docket entries. First, a July 31, 2019 docket entry reflects that Grant consulted with Brown and would be "retaining an expert to perfect certain claims made in the petition." [*Id.* at 6.] Then, on November 2, 2022, Grant filed a motion for additional discovery. [*Id.* at 12.]. The discovery motion sought to compel the state to "tender [ ] additional discovery materials," including information about the activities of an informant, which the motion says is information exclusively in Respondent's possession. [Dkt. 22 at 13–16.] The docket also reflects that another "motion of defense" was filed on March 30, 2023, though this Court has no information on the nature of that motion. This Court also has no information on the status of these motions, including whether they remain pending or whether Respondent has produced or intends to produce any of the requested material. From this evidence alone, it is not possible to determine whether any of this delay is attributable to the State.

Brown raises one other matter in his filing touching on the question of delay. He explains that he filed a complaint against Grant with the Attorney Registration and Disciplinary Commission (ARDC) in 2018 and again in 2022. [Dkt. 22 at 7–12.] Brown attaches some of the ARDC correspondence to his response brief, including a letter Grant wrote in response to the ARDC's inquiry in 2018. In it, Grant states that beginning in early 2017, "the 19 Judicial Circuit Clerk's Office informed me that the entire physical file in Mr. Brown's case had been destroyed and a copy existed only on 'film.' It thereafter took a number of months first for them to locate the file and I believe at least another month to finally print out over three-thousand pages of documents and transcripts." [*Id*. at 9.] The letter goes on to detail the steps Grant took to become familiar with Brown's file and his postconviction petition, including Grant's efforts to ensure that Brown himself had a complete copy of the file. Grant explained his plan for drafting a supplemental petition, which would take time to complete (in Grant's words, "several months"), with the goal of filing the supplemental petition in March or April of 2019. [*Id*. at 10.] The state court docket does not indicate that the supplemental petition Grant referenced in his letter was ever filed.

In many respects, Grant's letter cuts both ways. It details obstacles Grant faced to even obtain a complete copy of the petition from the Clerk, a delay ostensibly attributable to the state. But it also details Grant's efforts to learn the record and develop a strategy for supplementing the petition. That part of the delay appears to be attributable to Brown. But at this stage and based on this information alone, the record is not sufficiently developed to reach a conclusion on this question. It may well be that Grant's repeated requests for continuances in the state postconviction case means that the much of the seven-year delay is attributable to Brown. But more information is needed to determine what, if any, delay is attributable to the state and whether that delay qualifies as inordinate.

As a result, the best path forward is to appoint Brown counsel in this matter in the interest of justice. 18 U.S.C. 3006A(a)(2)(B) ("Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who is seeking relief under section 2241, 2254, or 2255 of title 28."). On the Court's own motion, the Federal Defender Program is appointed to represent Petitioner pursuant to the Criminal Justice Act. 18 U.S.C. 3006A(a)(2)(B). To allow time for appointed counsel to familiarized himself with the case, Respondent's motion to dismiss is denied without prejudice in light of Brown's inordinate delay argument.

Enter: 22-cv-2126
Date: September 28, 2023

_____
Lindsay C. Jenkins
United States District Judge